UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY R. KOZLOWSKI,

               Plaintiff,                          Civil Action No. 11-cv-12213

      v.                                 District Judge Gerald E. Rosen
                                       Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION TO
AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

       Plaintiff Tiffany Kozlowski appeals the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. *See* 42 U.S.C. § 405(g). Before the Court for Report and Recommendation are the parties' cross motions for summary judgment. (Dkts. 9, 12).

**I. RECOMMENDATION**

       For the reasons set forth below, this Court finds that substantial evidence supports the Administrative Law Judge's determination that there were occupations with a significant number of positions that Plaintiff could perform. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II.  REPORT

### A.  Procedural History

On March 20, 2008, Plaintiff applied for Supplemental Security Income ("SSI") asserting that she became unable to work on February 1, 2008.  (Tr. 10.)  The Commissioner initially denied Plaintiff's SSI application on May 9, 2008.  (*Id.*)  Plaintiff then filed a request for a hearing, and on March 29, 2010, she appeared with counsel before Administrative Law Judge ("ALJ") Joanne E. Adamczyk, who considered the case *de novo*.  (*See* Tr. 21-45.)  In a May 27, 2010 decision, ALJ Adamczyk found that Plaintiff was not disabled.  (Tr. 10-17.)  Her decision became the final decision of the Commissioner on April 6, 2011 when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (Tr. 1.)  Plaintiff filed this appeal on May 20, 2011. (Dkt. 1.)

### B.  Background

The legal arguments in this social security appeal are a bit atypical.  Plaintiff allegedly suffers from a number of medical conditions that contribute to her inability to work; these include, fibromyalgia, back and sciatic pain, headaches, and anxiety.  On appeal, however, Plaintiff does not assert that the ALJ evaluated the medical evidence incorrectly.  Nor does Plaintiff argue that the ALJ's residual functional capacity assessment, an assessment of what Plaintiff could still do despite her impairments, is not supported by the administrative record.  Instead, Plaintiff asserts that the ALJ erred in the last step of her disability analysis by relying on vocational expert testimony.  For this reason, the Court forgoes a summary of the medical evidence and focuses on the vocational expert's testimony at Plaintiff's hearing before the ALJ.

The ALJ solicited vocational expert ("VE") testimony regarding whether there were jobs

available for three different hypothetical individuals. *First*, the ALJ asked the VE to assume

> a person of the Claimant's age [27 years old], education [high school]
> and work history [limited housekeeping], who is limited to a
> restricted range of . . . [s]edentary work which would mean lifting up
> to 10 pounds frequently and less than that occasionally, who needs a
> true sit-stand option at will, who cannot climb . . . ladders, ropes or
> scaffolds. . . . Can occasionally climb ramps or stairs. Cannot kneel,
> crouch, or crawl.   Must avoid exposure to extreme wet
> (INAUDIBLE) humidity and cold. . . .  [S]imple, routine types of
> tasks. Where there's no production rate or pace work.  No interaction
> with the general public, and only occasional interaction with
> co-workers and bosses.

(Tr. 42.)  The VE testified that the hypothetical individual the ALJ described could work as (1) a

surveillance system monitor, (2) an assembler, (3) an inspector, and (4) a machine operator.  The

VE further said that, in the regional economy, i.e., Michigan's lower peninsula, there would be about

400, 1,700, 610, and 1,000 such jobs, respectively.

 *Second*, the ALJ asked the VE to consider the first hypothetical individual but with the

following additional limitations:

> the [person] could frequently but not constantly handle small objects
> that is fingering, and could occasionally lift larger objects, which
> would be gross manipulation, as long as they didn't weight more than
> 10 pounds.

(Tr. 43.)  The following exchange between the VE and the ALJ then ensued:

> [VE:]  The job of the surveillance systems manager would not be
> affected, and the job of the assembler – that would be within that
> range.
> [ALJ:]  What kind of assembler are you talking about here?
> A.  It's a sedentary assembler position.
> Q.  What do they do though?
> A.  They could be putting together and assembling anything from
> small parts for light fixtures, button notions or buttons and notions,
> electronic parts, to put together optical pieces, just any kind of light
> assembly. And that would be – it's rated at frequent reaching,
> handling and fingering but not constant.

3

> Q. Okay.
> A. And the machine operator positions, they range – I would reduce the numbers there because some of the positions there are constant reaching handling.
> Q. Okay.
> A. Some of them are frequent. And so I would reduce those positions to approximately 800, and the inspector positions . . . are all in the frequent range, not constant.

(Tr. 43.) Essentially then, the VE testified that the ALJ's second hypothetical individual would be able to perform the same jobs as the first hypothetical individual except that certain machine operator positions would be eliminated because of their requirement of constant, as opposed to frequent, reaching and handling.

*Third*, the ALJ asked the VE to consider the first hypothetical individual (the one without the manipulative limitations of the second individual) but with a "light" work modification:

> I'm going to go backwards on this. What if we had the same limitations as in the first hypothetical . . . except for being light, that is lifting up to 20 pounds occasionally, lifting or carrying 10 pounds frequently, stand and walking 6 of 8 hours a day. . . . [W]hat kind of jobs could such a person perform?

(Tr. 44.) The VE responded, "We'd be looking at reduced numbers of jobs for assembler, machine operator and inspectors." (Tr. 44.) It appears, however, that the ALJ expected that this third hypothetical individual would be *less* limited than the first since she had changed the base limitation from "sedentary" to "light"; the ALJ clarified: "Would there be other jobs though is what I'm asking?" (Tr. 44.) The ALJ also asked if the third hypothetical individual could engage in housekeeping or work as a janitor. (Tr. 44.) The VE testified that with the limitations of light work, "the sit-stand option[,] and no interaction with the public," the individual would be limited to "those kinds of . . . production jobs" (referring to assembler, machine operator, and inspector occupations) and that housekeeping would be precluded by the sit-stand option. (Tr. 44.)

4

Neither Plaintiff nor her counsel asked the VE any questions or engaged in any cross examination.  (Tr. 45.)

### C.  Framework for Disability Determinations

Under the Social Security Act Supplemental Security Income is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work

experience, benefits are denied.

*Tate v. Comm'r of Soc. Sec.*, No. 10-14107, 2011 WL 6293556, at *5 (Nov. 18, 2011) *report adopted by* 2011 WL 6217067 (E.D. Mich. Dec. 14, 2011); *see also* 20 C.F.R. §§ 404.1520, 416.920; *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

Applying the five-step process just described, ALJ Adamczyk ruled as follows. At step one, she found that Plaintiff has not engaged in substantial gainful activity since March 20, 2008 – the date of Plaintiff's application for SSI. (Tr. 12.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, chronic headaches, bilateral tendonitis, chronic low-back pain, depression, and polysubstance abuse disorder in remission. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform:

> light work as termed in 20 CFR 416.967(b) except that the claimant needs a sit/stand option, she cannot climb ladders, ropes or scaffolds, occasionally climb ramps or stairs and cannot perform job duties that require kneel[ing], crawling or crouching. She can frequently but not constantly handle objects, that is, gross manipulation. The claimant must avoid exposure to extremes of cold, wetness or humidity. She is limited to simple routine, repetitive work where there is no production rate or pace work, no interaction with the general public and only occasional interaction with co-workers and supervisors.

(Tr. 12.) At step four, the ALJ found that Plaintiff could not perform any of her past, relevant work.

6

(Tr. 16.)

As mentioned at the outset, Plaintiff does not challenge any the foregoing findings.  Instead, Plaintiff asserts that ALJ erred at step five.  In that regard, the ALJ provided:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of the representative, regional occupation of a production assembler (1,400).  Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(Tr. 17.)

### E.  Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th

Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

### F.  Analysis

Plaintiff raises a number of arguments relating to the ALJ's reliance on the VE's testimony in making her step-five determination that a significant number of jobs were available for an individual of Plaintiff's age, education, work experience, and residual functional capacity ("RFC").

8

In particular, Plaintiff asserts that (1) the ALJ's proscription against "production rate or pace work" is inconsistent with her subsequent conclusion that Plaintiff could perform the "occupation of a production assembler" (Pl.'s Mot. for Summ. J. at 3-4); (2) the ALJ's RFC limitation of "simple routine, repetitive work" is more restrictive than the "simple, routine types of tasks" limitation posed to the VE (*id.* at 4; *see also* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4); (3) the ALJ's finding that there were 1,400 "production assembler" jobs in the regional economy was not supported by the VE's testimony (Pl.'s Mot. for Summ. J. at 4 n.2); and (4) the ALJ failed to ask the VE whether her testimony was consistent with the "Dictionary of Occupational Titles" and, in fact, the VE's testimony conflicted with the Dictionary in three ways (*id.* at 6).  The Court will analyze these claims of error in this order.

Plaintiff's first argument is not persuasive.  She emphasizes that, on the one hand, the ALJ's RFC assessment precluded her from performing "production rate or pace work," yet, on the other hand, the ALJ concluded that Plaintiff was capable of performing the job of "production assembler." (*Compare* Tr. 12 *with* Tr. 17.)  This, says Plaintiff, was an "obvious contradiction."  (Pl.'s Resp. to Def.'s Mot. Summ. J. at 1.)  Even assuming any inconsistency, it was technical rather than substantive.  When the ALJ provided the three hypotheticals to the VE, she explicitly stated that the individuals would be limited to "simple, routine types of tasks[,] *[w]here there's no production rate or pace work*." (Tr. 42 (emphasis added).)  In view of this limitation, the VE nonetheless testified that the hypothetical individuals could perform assembler, machine operator, and inspector jobs. Plaintiff does not assert that the VE did not comprehend the limitation of "no production or pace work" or that the VE failed to account for that limitation in testifying that certain "production" jobs would be available to someone with that limitation.  It is not implausible that certain assembler,

machine operator, and inspector jobs have no pace or quota requirement. And to conclude otherwise would be to question the expertise or credibility of the VE. But Plaintiff makes no such argument and the Court will not do so *sua sponte*.

Next, Plaintiff asserts that the hypotheticals the ALJ provided to the VE included the limitation "simple, routine types of tasks[,] [w]here there's no production rate or pace work" (Tr. 42), whereas the RFC limited Plaintiff to "simple routine, *repetitive* work where there is no production rate or pace work" (Tr. 12 (emphasis added)). It is Plaintiff's position that because the RFC is more restrictive than the hypotheticals provided to the VE, although there may be significant jobs available to the hypothetical individuals, the same jobs may not be available to Plaintiff. (Pl.'s Mot. Summ. J. at 4; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.) Plaintiff faults the Commissioner for relying on "Dictionary.com" definitions to support the claim that "'routine' includes the idea of 'repetitiveness'" and essentially urges the Court to apply the cannons of textual construction that different words are to be given different meaning and that a construction which renders a word superfluous is to be avoided. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.)

As an initial matter, the Court questions the approach of both parties – it is not apparent that the type of judicial scrutiny a court applies to statutes, i.e., the carefully chosen words of Congress signed into law by the President, should apply with equal force to statements that an ALJ makes at an administrative hearing. With that in mind, and given the facial similarity between what the ALJ said at the hearing – "simple, routine types of tasks" – and in her written decision – "simple[,] routine, repetitive work" – the Court is reluctant to conclude that the difference between the two statements is so significant to warrant remand or reversal. This reluctance is heightened in view of the fact that Plaintiff offers no argument that the jobs contemplated by the VE were not repetitive

10

in nature.  In fact, Plaintiff argues that the "production assembly position which most accurately reflects the testimony of the Vocational Expert is . . . contained in DOT Code 706.687-010."  (Pl.'s Resp. to Def.'s Mot. Summ. J. at 7.)  But the corresponding definition provides: "Performs *repetitive* bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves . . . ."  Dep't of Labor, *Dictionary of Occupational Titles*, 706.687-010 Assembler, Production (4th ed. 1991) *available at* 1991 WL 679074 (emphasis added).  There are a number of assembler-type occupations in the DOT that comport with Plaintiff's RFC and are repetitive.  *See e.g.*, *id.* 706.684-022 Assembler, Small Products I, *available at* 1991 WL 679050 ("Performs any combination of following *repetitive* tasks on assembly line . . . ." (emphasis added)); 723.684-018 Assembler II, 1991 WL 679521; 726.684-018 Electronic Assembler, 1991 WL 679521.  Accordingly, while the ALJ should have spoken more precisely, on the facts of this case, the Court does not find reversible error in the ALJ's reliance on VE testimony in response to hypotheticals including the limitation "simple, routine types of tasks" instead of "simple[,] routine, repetitive work."

Plaintiff's third argument is that substantial evidence does not support the ALJ's determination that there were 1,400 jobs that she could perform.  She points out that in response to the ALJ's third hypothetical – which included the same functional limitations as the first hypothetical individual except that the third assumed individual could perform the demands of "light" instead of "sedentary" work – the VE testified to a "reduced numbers of jobs for assembler, machine operator and inspectors" but never specified the reduced numbers.  (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 2.)  The ALJ determined that Plaintiff, like that of the third hypothetical individual, had the residual functional capacity to perform a restricted range of "light" work.  Thus,

11

says Plaintiff, "[w]ithout the existence of the number of production assembly positions available in the Plaintiff's regional economy, the ALJ could not be certain that work existed in significant numbers." (*Id.*)

The Commissioner responds with an *a fortiori* argument. Defendant says that the Court should focus on the second, "sedentary work" hypothetical individual instead of the third, "light work" hypothetical individual. The Commissioner asserts that the second hypothetical individual included all of the limitations of Plaintiff's RFC save for that fact that the second hypothetical individual was limited to "sedentary" work instead of more demanding "light" work. And the VE testified that the second hypothetical individual would be able to perform one of 400 surveillance system monitor jobs, 1,700 assembler jobs, 610 inspector jobs, and 800 machine operator jobs. (*See* Tr. 42-43.) It follows, according to the Commissioner, that the same number of jobs would be available to someone with the same limitations as the second hypothetical individual except with the expanded ability to do light work. (Def.'s Mot. Summ. J. at 7.) The Court agrees with the Commissioner's basic reasoning but the argument requires further development in light of Plaintiff's rebuttal.

Plaintiff points out that S.S.R. 96-9p "clearly states that some individuals may not be capable of performing the requirements of a sedentary job, but would nonetheless be capable of performing light exertional work." (Pl.'s Resp. to Def.'s Mot. Summ. J. at 2.) Although Plaintiff cites no particular language of that Ruling, she apparently relies on the following:

> *The fact that an individual cannot do the sitting required to perform the full range of sedentary work does not necessarily mean that he or she cannot perform other work at a higher exertional level. In unusual cases, some individuals will be able to stand and walk longer than they are able to sit.* If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other

> requirements for light work), there may be a significant number of
> light jobs in the national economy that he or she can do even if there
> are not a significant number of sedentary jobs.

S.S.R. 96-9p, 1996 WL 374185, at *6 (emphasis added).  Plaintiff therefore implies that although

significant jobs existed for the second, "sedentary" hypothetical individual, it is possible that the

same individual except with a base limitation of "light" may have difficulty sitting for about two-

thirds of an eight-hour workday.  Plaintiff concludes that *less* jobs may have been available to

someone with the limitations of the second hypothetical individual but with the ability to perform

light work, i.e., someone with her RFC.

Plaintiff's argument is logically sound but the Court finds that it does not apply with

particular force in this case.  In constructing the first hypothetical individual, the ALJ stated:

"Sedentary work which would mean lifting up to 10 pounds frequently and less than that

occasionally, *who needs a true sit-stand option at will*." (Tr. 42 (emphasis added).) The emphasized

limitation was never removed when the ALJ constructed the second and third hypothetical

individuals.  Thus, the problem suggested by Plaintiff, that the second hypothetical individual

modified with the ability to perform light instead of sedentary work may have difficulty sitting for

about two-thirds of an eight-hour workday, was mitigated by the ALJ's additional limitation.  If the

light work individual could stand for six hours in a day but had difficulty sitting for six hours in a

day, the individual had a "true," "at-will" option to stand.  Additionally, and equally convincing, the

ALJ never suggested any sitting limitation for any of the hypothetical individuals.  That is, nothing

suggests that Plaintiff (or the hypothetical individuals) is the unusual individual who can stand for

six hours in an eight-hour day but cannot sit for that same period of time.  Accordingly, the Court

is persuaded by the Commissioner's argument that because significant jobs existed for the second,

"sedentary" hypothetical individual, *a fortiori*, significant jobs existed for a person with the same limitations but capable of "light" work. Because this latter individual accurately reflects Plaintiff's RFC, the Court does not find that the ALJ erred in relying on VE testimony in this regard.

Fourth, Plaintiff argues that the ALJ did not comply with the requirements of S.S.R. 00-4p regarding potential conflicts between VE testimony and the Dictionary of Occupational Titles ("DOT"). That Social Security Ruling provides:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the [Dictionary of Occupational Titles ("DOT")]. In these situations, the adjudicator will:
>
>> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>>
>> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

S.S.R. 00-4p, 2000 WL 1898704, at *4.

The hearing transcript reflects that the ALJ did not complete the first step outlined in the Ruling. Indeed, the Commissioner admits as much. (Def.'s Mot. Summ. J. at 8.) But, relying on *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009) (per curiam), the Commissioner asserts the error was "harmless unless Plaintiff can identify a conflict between the Dictionary . . . and the vocational expert's testimony." (*Id.*) In *Terry*, the Seventh Circuit held that an ALJ's failure to ask a VE if his testimony conflicted with the DOT "is harmless unless there actually was a conflict." *Terry*, 580 F.3d at 478.

Plaintiff responds that "[a]dopting the reasoning of *Terry* . . . would only serve to contradict our Circuit's own precedent that this Circuit will remand cases to the agency when the agency fails

to follow its own regulations. *See Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009)." (Pl.'s

Resp. to Def.'s Mot. Summ. J. at 6.)   The Court disagrees and finds Plaintiff's reliance on *Allen*

misplaced.   In particular, *Allen* dealt with the treating-source rule which contains a unique

procedural requirement the violation of which may warrant remand even if substantial evidence

supports the ALJ's decision.   *Allen*, 561 F.3d at 651; *see also Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 243 (6th Cir. 2007).   But the Sixth Circuit has not applied that heightened requirement to

many – if any – other procedural violations.   In fact, the Court of Appeals has clarified that harmless

error review applies unless the procedural violation itself deprives a claimant of substantial rights:

> We have recognized that "[i]t is an elemental principle of
> administrative law that agencies are bound to follow their own
> regulations." . . .   Generally, however, we review decisions of
> administrative agencies for harmless error. . . .   Accordingly, if an
> agency has failed to adhere to its own procedures, we will not remand
> for further administrative proceedings unless "the claimant has been
> prejudiced on the merits or deprived of substantial rights because of
> the agency's procedural lapses." . . .
>
> [The] circumscribed form of harmless error review [set forth in
> *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)] has not
> been applied outside the context of the reasons-giving requirement of
> § 404.1527(d)(2), and we decline the invitation to extend it to this
> case.   The treating physician rule occupies a special place in social
> security cases . . . .

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654-56 (6th Cir. 2009).   Therefore, the Seventh

Circuit's harmless error review for a violation of S.S.R. 00-4p does not contradict Sixth Circuit

precedent – it is in harmony with it.   The Court will apply harmless-error review to the violation of

S.S.R. 00-4p in this case.   *See Borg v. Comm'r of Soc. Sec.*, No. 11-11210, 2011 WL 6955719, at *6

(Dec. 11, 2011) *report adopted by* 2012 WL 28136 (E.D. Mich. Jan. 5, 2012) (applying harmless

error review to ALJ's failure to ask if VE testimony conflicted with the DOT); *Wadsworth v.*

15

*Comm'r of Soc. Sec.*, No. 10-11216, 2011 WL 4537075, at *10 (May 18, 2011) *report adopted by* 2011 WL 4537070 (E.D. Mich. Sept. 30, 2011) (same).

Plaintiff asserts that the VE's testimony is inconsistent with the "Assembler, Production" position, DOT Code 706.687-010. *See* Dep't of Labor, *Dictionary of Occupational Titles*, 706.687-010 Assembler, Production (4th ed. 1991) *available at* 1991 WL 679074. In particular, Plaintiff asserts that (1) the "Assembler, Production" position requires occasional crouching but the ALJ's hypotheticals proscribed crouching, (2) the "Assembler, Production" position requires a General Educational Developmental Reasoning Level of two or higher but the ALJ limited Plaintiff to "simple, routine, repetitive work where there is no production rate or pace work," and (3) the ALJ provided and the VE testified to a sit-stand limitation which is not provided for in the "Assembler, Production" position. (Pl.'s Mot. Summ. J. at 6.) The Court finds that the VE's testimony did not conflict with DOT in these three ways.

The DOT in part defines the "Assembler, Production" as follows:

> Performs repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. Bolts, clips, screws, cements, or otherwise fastens parts together by hand, or using handtools or portable power tools. . . .

1991 WL 679074. And Plaintiff is correct that the position requires "occasional" crouching, a reasoning level of two or higher, and does not mention a sit-stand option. *See id.*

Plaintiff focuses on the "Assembler, Production" occupation because the ALJ's decision provides:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an

16

> individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of the representative, regional occupation of a *production assembler* (1,400).

(Tr. 17 (emphasis added).)

But a review of the relevant hearing testimony reveals that the VE was not limiting her testimony to that specific DOT occupation:

> [ALJ:]  What kind of assembler are you talking about here?
> [VE:]  It's a sedentary assembler *position*.
> Q.  What do they do though?
> A.  They could be putting together and assembling *anything* from small parts for light fixtures, button notions or buttons and notions, electronic parts, to put together optical pieces, just *any kind of light assembly*. And that would be – it's rated at frequent reaching, handling and fingering but not constant.
> Q.  Okay.

(Tr. 43 (emphases added).)  The VE also collectively referred to the assembler, the machine operator, and the inspector positions as "production jobs."  (Tr. 44.)  This further suggests that the VE referenced "assembler" positions generally rather than the specific "Assembler, Production" job as defined in the DOT.

In fact, the DOT provides a number of "assembler" jobs that fit the limitations of the ALJ's second hypothetical individual and RFC assessment of Plaintiff.  For instance, "Assembler, Small Products I" with DOT Code 706.684-022 is designated "Any Industry" and the DOT defines the occupation as:

> Performs any combination of the following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors . . . .

17

Dep't of Labor, *Dictionary of Occupational Titles*, 706.684-022 Assembler, Small Products I, 1991 WL 679050 (4th ed. 1991).  In addition, the VE testified that the assembler positions she was referring to could involve assembling "light fixtures," "buttons and notions," "electronic parts," and "optical pieces."  The DOT contains assembly occupations specifically relating to these tasks and are consistent with Plaintiff's RFC (light work, a reasoning level of two, no climbing or crouching, and only frequent handling and fingering).  *See id.* 723.684-018 Assembler II, 1991 WL 679521 ("Assembles metal lighting fixtures . . . ."); 734.687-014 Assembler, 1991 WL 679949 ("Assembles fabric badges from such materials as metal bars, ribbon, and metal buttons . . . .  Field 1: 618 - Costume Jewelry and Novelties, Buttons, and Notions"); 726.684-018 Electronic Assembler, 1991 WL 679521 ("Performs any combination of following tasks to assemble electronic components . . . ."); 713.684-014 Assembler, Molded Frames, 1991 WL 679261 ("Assembles plastic eyeglass frames . . . ."); 713.684-010 Assembler, Gold Frame, 1991 WL 679256 ("Assembles gold, aluminum, platinum, or other metallic wire eyeglass frames . . . .").  Accordingly, the Court concludes that the VE testified regarding assembler-type jobs generally rather than the "Assembler, Production" job specifically.

It remains, however, that the DOT does describe assembler jobs, or one at least, with functional demands that are inconsistent with Plaintiff's RFC and the second hypothetical individual (e.g., the "Assembler, Production" position requires occasional crouching).  Thus, the question is whether the presence of these assembler occupations in the DOT means that the VE's testimony conflicted with the Dictionary even though, as the Court has cited, other listed occupations are consistent with the VE's testimony.  On this point, the Court finds persuasive the Seventh Circuit Court of Appeal's decision in *Weatherbee v. Astrue*, 649 F.3d 565 (7th Cir. 2011).

18

In *Weatherbee*, the appellant, Weatherbee, argued that "the ALJ failed to investigate and resolve discrepancies between the VE's testimony and the *DOT*" as required by S.S.R. 00-4p. *Id.* at 570. The VE testified that the hypothetical individual had the ability to perform "some general office clerk jobs that are [classified as] unskilled sedentary." *Id.* at 571. Weatherbee asserted that the VE was referring specifically to "Office Clerk" with DOT Code 209.562-010 and that the VE's testimony was therefore in conflict with the DOT because the DOT classifies that occupation as non-sedentary and semi-skilled. *Id.* at 571. The Court disagreed:

> We reject Weatherbee's interpretation of the VE's testimony. When read in the context of the VE's adjacent testimony, it is clear that the VE's discussion of "office clerk jobs" was meant to refer to a broad category of jobs that the DOT describes as clerical, not to the single occupation listed in Section 209.562-010 of the DOT. Almost immediately after stating that an individual with Weatherbee's impairments could work in some "general office clerk jobs," the VE added that a "sample occupational title would be Document Preparer." The fact that the VE provided the Document Preparer occupation—listed in Section 249.587-018 of the DOT—as an example of a clerk position clearly indicates that she was using the term clerk in a general sense. The VE's use of the term in this manner is consistent with its usage throughout the DOT. *See, e.g.*, Dep't of Labor, Dictionary of Occupational Titles §§ 221-229, 243-249 (occupational entries for a variety of different clerk positions). Hence, the VE's testimony regarding Weatherbee's ability to perform some general office clerk positions did not conflict with the DOT.

*Weatherbee*, 649 F.3d at 571. The foregoing suggests that the VE in this case – who spoke of assembler positions generally – did not offer testimony in conflict with the DOT.

Moreover, to conclude otherwise would be to read the VE's testimony – given in direct response to the limitations provided by the ALJ – as encompassing assembler-type jobs provided in the DOT that are inconsistent with the ALJ's limitations. That is, Plaintiff would have the Court assume that the VE included assembler occupations requiring crouching (for example) and the VE

19

thereby implicitly asserted a disagreement with the DOT regarding those occupations.  But a more supportable reading of the VE's testimony is that the VE, in referencing a broad class of assembler-type occupations, testified only to the subset of assembler occupations that are consistent with the limitations provided by the ALJ.  These would include, for example, the assembler occupations in the DOT cited by the Court.  *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 167 (6th Cir. 2009) (finding no conflict between VE testimony and the DOT where VE testified that office clerk, production worker, and inspector/tester jobs were "sedentary unskilled" but DOT indicated "that jobs in these occupations typically require light exertion and skill levels beyond unskilled"; explaining that "not all occupations are included in the DOT, and the VE may use terminology that differs from the terms used in the DOT.").

Two issues remain.  Each of the DOT occupations discussed so far require a General Educational Developmental Reasoning Level of at least two and none of them mention a sit-stand option.  Regarding the former, Plaintiff maintains that the ALJ's limitation of "simple routine, repetitive work where there is no production rate or pace work" conflicts with the DOT's definition of level-two reasoning: the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations."  Dep't of Labor, *Dictionary of Occupational Titles*, App'x C (4th ed. 1991).

Although there is no binding authority from the Sixth Circuit Court of Appeals on this particular issue, this argument has been addressed by other courts.  Although there is some support for Plaintiff's position, the majority view is that a simple, routine work limitation does not conflict with DOT's Reasoning Level of two.  *Stokes v. Astrue*, 274 F. App'x 675, 2008 WL 1766788, at *8

(10th Cir. 2008); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *Stern v. Comm'r of Soc. Sec.*, No. 1:10 CV 1961, 2011 WL 6780889, at *6 (Nov. 23, 2011) *report adopted by* 2011 WL 6780883 (N.D. Ohio Dec. 27, 2011); *Dana v. Astrue*, No. 09-514-BW, 2010 WL 3397465, at *3 (Aug. 24, 2010) *adopted by* 2010 WL 3702633 (D. Me. Sept. 13, 2010) ("I have recommended today [in *Pepin v. Astrue*, No. 09-464-P-S, 2010 WL 3361841 (D. Me. Aug. 24, 2010) *adopted by* 2010 WL 3724286 (D.Me. Sept. 16, 2010)] that this court abandon its minority position on this issue in favor of that taken by the great majority of courts that have addressed it, i.e., that a limitation to simple, routine, repetitive tasks is not inconsistent with a GED reasoning level of 2 in the DOT."); *cf. Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183 (Table), 1998 WL 381361 at *6 (6th Cir. 1998) ("[T]he reasoning development requirements [of the DOT] . . . are merely advisory in nature. A vocational expert's testimony may override the job descriptions and requirements contained in the DOT; [Appellant] therefore cannot use the DOT to rebut or impeach the vocational expert's testimony." (internal citation and quotation marks omitted)). The Court finds the foregoing authority persuasive, and Plaintiff has cited no contrary case law. Accordingly, the Court finds no conflict between the VE's testimony and the DOT's General Educational Developmental Reasoning Level of two.

Finally, Plaintiff points out that the assembly positions in the DOT do not include a sit-stand option and therefore the VE's testimony conflicts with the DOT. A number of courts throughout this Circuit disagree. *Reed v. Comm'r of Soc. Sec.*, No. 1:10-cv-350, 2011 WL 4571813, at *9 (W.D. Mich. Sept. 30, 2011) ("As courts recognize, '[b]ecause the DOT does not address the subject of sit/stand options,' testimony from a vocational expert that there exist jobs which a claimant, subject to a sit/stand limitation, can perform is not in conflict with the DOT." (quoting *Zblewski v.*

*Astrue*, 392 F. App'x 488, 494 (7th Cir. Dec.15, 2008))); *Drossman v. Astrue*, No. 3:10–CV–1118, 2011 WL 4496561, at *6 (N.D. Ohio Sept. 27, 2011); *Garvin v. Astrue*, No. 3:10:0498, 2011 WL 3205350, at *13 (July 26, 2011) *report adopted by* 2011 WL 3875748 (M.D. Tenn. Sept. 1, 2011); *Fort v. Comm'r of Soc. Sec.,* No. 09-11128, 2010 WL 3789622, at *8 (July 28, 2010) *report adopted by* 2010 WL 3789598 (E.D. Mich. Sept. 22, 2010). Again, Plaintiff does not cite contrary case law and has not persuaded the Court to depart from the cited authority. Accordingly, the Court finds that the VE's testimony that significant jobs would be available to the hypothetical individuals requiring a sit-stand option did not conflict with the DOT.

### G.  Conclusion

For the foregoing reasons, this Court finds that substantial evidence supports the Administrative Law Judge's determination that there were occupations with a significant number of positions that Plaintiff could perform. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  March 14, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 14, 2012.

s/Jane Johnson
Deputy Clerk